[No. D004758. Fourth Dist., Div. One. Apr. 28, 1987.]

CLOTHESRIGGER, INC., Plaintiff and Appellant, v.
GTE CORPORATION et al., Defendants and Respondents.

**COUNSEL**

Milberg, Weiss, Bershad, Specthrie & Lerach, William S. Lerach, Margaret G. Dobies, Simon J. Freedman and James A. Mangione, for Plaintiff and Appellant.

Reboul, MacMurray, Hewitt, Maynard & Kristol, Mark A. Flagel, Naomi A. Brunner, Kathleen Janetatos Smith, Howard G. Kristol and William I. Sussman for Defendants and Respondents.

**OPINION**

**KREMER, P. J.**—Plaintiff Clothesrigger, Inc. appeals an order denying its motion to modify the class definition to certify a nationwide plaintiff class and deeming moot its motion to amend its complaint. We find the superior court did not proceed as required by law in denying Clothesrigger's motion to modify the class. We reverse and remand to the superior court with directions to decide Clothesrigger's motions according to applicable law and proper criteria.

I

In January 1984 Clothesrigger filed a class action complaint for compensatory damages, punitive damages and injunction against defendants GTE Corporation, GTE Sprint Communications Corporation, Southern Pacific Company and Southern Pacific Communications Co. Clothesrigger's complaint alleges causes of action for fraud, negligent misrepresentation and unfair business practices, asserting defendants charge subscribers to their Sprint long distance telephone system for certain unanswered long distance calls without disclosure. The complaint also alleges Clothesrigger seeks to represent a class numbering in the thousands ". . . composed of all residents of California who subscribed to the long distance telephone service provided by defendants known as Sprint since January 1, 1981, and were charged for one or more long distance calls which were not answered."

In March 1985 after considering the parties' declarations and counsel's argument, the superior court granted Clothesrigger's motion to certify the case to ". . . be maintained as a class action on behalf of all residents of California who subscribed to the long distance service known as Sprint since January 1, 1981 and who were charged for one or more long distance calls using the Sprint service, which were not answered."

In December 1985 Clothesrigger moved to modify the definition of the certified class to include all Sprint subscribers nationwide since January 1981 who were charged for an unanswered call. Later Clothesrigger filed a motion to amend its complaint to allege Clothesrigger sought to represent such nationwide class "composed of over a million persons."

In May 1986, after hearing, the superior court denied Clothesrigger's motions. The court stated: "When you consider the totality of the circumstances of this case, I just do not consider a national class to be suitable in this type of case. I mean, you have got your class action for the citizens of California. . . .

"[T]here was a recent case out of the 2nd district [*Riley* v. *Fitzgerald* (1986) 178 Cal.App.3d 871 (223 Cal.Rptr. 889)] where they had that business of the Texas people, and the 2nd district said, 'Well, look. We are not going to take care of these people in Texas.' I guess what I am telling you is that I have got enough problems in California without worrying about all the citizens of Florida, Kansas and Dokerville, South Dakota, and everything.

"I just have considered the totality of the circumstances of this case, and I do not consider a national class action to be suitable in this case. I have denied it on the merits. . . .

"[T]he amendment becomes moot because I faced the issue on the merits,
. . .

". . . . . . . . . . . . . . . . . . .

"It just seems to me, when I look at the total picture as they did in the case out of Kansas [*Phillips Petroleum Co.* v. *Shutts* (1985) 472 U.S. 797 (86 L.Ed.2d 628, 105 S.Ct. 2965)], it just does not make sense to try to bring in the other 49 states into this action."

Referring to *Riley* v. *Fitzgerald, supra,* 178 Cal.App.3d 871, the court also said ". . . it seems to me California has no interest in providing residents of other states greater protection than their home states provide. I mean, why should California take it upon itself to be the savior of the other 49 states of the union? . . ."

The court entered an order denying Clothesrigger's motion for modification of class definition and deeming moot Clothesrigger's motion for leave to amend its complaint. Clothesrigger appeals.

## II

As in every appellate matter, the threshold issue here is the proper standard of review. The hierarchical process and respective roles of the trial and appellate courts involve more than ceremony. ▇ Generally appropriate appellate deference to the trial court will be accomplished by affirming a correct trial court order even though the trial court may have given the wrong reason for its actions. (*Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].) Defendants contend that rule must be applied here since ". . . the role of this Court is not to review the record to determine whether it would have decided the issue differently but, rather, simply to ascertain whether the Superior Court had any rational basis for what it did," citing *DeYoung* v. *Del Mar Thoroughbred Club* (1984) 159 Cal.App.3d 858, 863 [206 Cal.Rptr. 28], as exemplifying the rule. Defendants are in error. Their reliance on *DeYoung* is also erroneous. *DeYoung* merely repeats the frequently quoted substantial evidence rule of *Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]. That rule has nothing to do with the standard of review in this case.

"There are several situations in which the reasons for the trial court's decision are either required by statute or, though not required, may have a significant effect on the determination of the appeal." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 262, p. 269.) These nonstatutory situations involve issues where the appellate focus is on the *means* used by the trial court. The

right result is an inadequate substitute for an incorrect process. Thus the appellate scrutiny should be on the reasons expressed by the trial court in the context of counsel's arguments, not merely whether the trial court reached a result which can be justified by implication.

Code of Civil Procedure section 382 authorizes a class action suit "... when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, ..."

"The party seeking certification as a class representative must establish the existence of an ascertainable class and a well-defined community of interest among the class members. [Citation.] The community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. (See Civ. Code, § 1781, subds. (b)(2)-(4).)" (*Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].)

■ "Reviewing courts consistently look to the allegations of the complaint and the declarations of attorneys representing the plaintiff class to determine if the class is ascertainable and has a well-defined community of interest. [Citations.]" (*Lazar* v. *Hertz Corp.* (1983) 143 Cal.App.3d 128, 134 [191 Cal.Rptr. 849].) Although the trial court has great discretion with regard to class certification, its ruling may be reversed where, as here, the court made erroneous legal assumptions or used improper criteria. (*Id.* at pp. 133-134, citing *Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at p. 470.) In denying Clothesrigger's motion to modify the certified class definition, the superior court did not engage in the analysis required under *Phillips Petroleum Co.* v. *Shutts, supra,* 472 U.S. 797, California law regarding class actions and California choice of law rules. Our focus on correct process requires us to reverse even though there may be substantial evidence to support the court's order.

### III

■ A state may constitutionally exercise jurisdiction over the claims of nonresident plaintiffs in a nationwide class action case where the named plaintiff adequately represents the absent class members' interests and the members of the plaintiff class are given adequate notice, the opportunity to be heard and the opportunity to remove themselves from the class. (*Phillips Petroleum Co.* v. *Shutts, supra,* 472 U.S. at pp. 811-812 [86 L.Ed.2d at pp. 641-642].) To apply its law constitutionally to the claims of nonresident class members, the forum state must have a " 'significant contact or aggrega-

tion of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests', in order to ensure that the choice of [forum] law is not arbitrary or unfair." (*Id.* at pp. 821-822 [86 L.Ed.2d at p. 648].)

■ Defendants contend applying California law to the claims of nonresident plaintiffs would be unconstitutional under *Phillips.* Clothesrigger contends applying California law would be constitutional because California has a constitutionally sufficient aggregation of contacts with the claims of nonresident plaintiffs consisting of the facts defendants do business in California, defendant Southern Pacific Corporation's principal offices are in California, a significant number of Sprint subscribers are California residents, and defendant GTE Sprint Communications Corporation's employees and agents who prepare advertising and promotional literature for the Sprint service are located in California and thus the alleged fraudulent misrepresentations forming the basis of the claim of every Sprint subscriber nationwide emanated from California.

■ In denying Clothesrigger's motion, the superior court did not expressly find application of California law to the claims of nonresident plaintiffs would be unconstitutional. Nothing in the court's findings suggests the court considered whether California has significant contacts with Sprint subscribers nationwide or otherwise purported to engage in a constitutional analysis under *Phillips.* Indeed, referring to *Phillips,* the court simply said it did ". . . not make sense to try to bring in the other 49 states into this action."

■ If we interpret the court's ruling as containing an implied finding applying California law to the claims of nonresident plaintiffs would be unconstitutional, such implied finding would not be supported by this record. The facts asserted by Clothesrigger at this stage of the proceeding, if true, would appear to constitute a sufficient aggregation of contacts under *Phillips* to permit applying California law to the claims of nonresident plaintiffs.

## IV

■ In denying Clothesrigger's motion to modify the certified class definition, the superior court stated it considered a nationwide class to be unsuitable under the "totalty [*sic*] of the circumstances of this case." The only such circumstance specified by the court was the fact plaintiffs from the other 49 states might be involved in the lawsuit if a nationwide class were certified. The court said it had enough problems without worrying about nonresident plaintiffs and California had no interest in becoming the "savior" of the other 49 states. Although the court did not expressly find common questions of

law would not predominate or a nationwide class action would be unmanageable, it appears the court considered Clothesrigger's motion fatally defective because including plaintiffs from the other 49 states would necessitate applying other states' laws and result in an unmanageable lawsuit. However, in making its ruling, the court did not engage in the analysis required under California choice of law rules.

■ "Analysis of a choice of law question proceeds in three steps: (1) determination of whether the potentially concerned states have different laws, (2) consideration of whether each of the states has an interest in having its law applied to the case, and (3) if the laws are different and each has an interest in having its law applied (a 'true' conflict), selection of which state's law to apply by determining which state's interests would be more impaired if its policy were subordinated to the policy of the other state. [Citations.]" (*North American Asbestos Corp.* v. *Superior Court* (1986) 180 Cal.App.3d 902, 905 [225 Cal.Rptr. 877], citing *Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313, 320 [128 Cal.Rptr. 215, 546 P.2d 719] and *Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 580-581 [114 Cal.Rptr. 106, 522 P.2d 666].)

Clothesrigger had the burden to prove common issues of law would predominate. Clothesrigger attempted to meet such burden by showing California law would likely apply to the claims of nonresident plaintiffs. Clothesrigger contended application of California law to such claims was constitutional under *Phillips* and compelled by California choice of law rules. Clothesrigger asserted California's interest in deterring fraudulent conduct by businesses headquartered within its borders and protecting consumers from fraudulent misrepresentations emanating from California would override any possible interest of any other state in application of its own laws to its residents' claims.

■ "[G]enerally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event he must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it. [Citations.]" (*Hurtado* v. *Superior Court, supra,* 11 Cal.3d at p. 581.) Opposing Clothesrigger's motion, defendants contended other states' fraud laws differed from California's as to standard of proof, measure of damages, availability of punitive damages and statute of limitations. Defendants asserted California's interests were subordinate to other states' interests in uniform predictable application of their laws and in controlling competition and practices of common carriers doing business within their borders.

■ In denying Clothesrigger's motion, the court did not make an express finding California law was not likely to apply to the claims of nonresi-

dent plaintiffs. Instead, the court referred to its desire to avoid involving the other 49 states and avoid having California assume the role of protector of the rights of nonresident plaintiffs. Although the precise rationale for the court's decision is unclear, the court's comments show its ruling was not in accord with applicable California choice of law rules.

If the superior court's comments are interpreted to mean the court chose not to engage in any choice of law analysis, then the court failed to exercise its discretion properly in determining whether common issues of law predominated. The court's comments may also be interpreted to mean the court felt California law should not apply to claims of nonresident plaintiffs even if California choice of law rules mandated such application. Although the court may properly state its disagreement with such well-established choice of law rules, it may not decline to follow them.

If we assume the court in fact attempted to apply California choice of law rules, we may interpret the court's comments as reflecting a finding California law would not apply to any nonresident plaintiffs and thus a nationwide class action would be unmanageable. However, such findings would not be supported by the reasoned choice of law analysis required under California law. Further, the court's comments express a misapprehension of applicable law and mistaken reliance on *Riley* v. *Fitzgerald, supra,* 178 Cal.App.3d 871. Thus, denial of Clothesrigger's motion was based upon improper criteria and erroneous legal assumptions.

Clothesrigger asserted the fraudulent misrepresentations and unfair business practices forming the basis of the claim of each member of the proposed nationwide class emanated from California. Clothesrigger identified California's fraud deterrence and consumer protection interests in applying its law to the claims of nonresident plaintiffs. Under certain facts California may have an important interest in applying its law to punish and deter the alleged wrongful conduct. (*Hurtado* v. *Superior Court, supra,* 11 Cal.3d at p. 583.) Conversely, that interest may be minimal and outweighed by other states' interests. However, in denying Clothesrigger's motion, the court did not identify any proper reason California law would not likely apply to nonresident plaintiffs.

The superior court did not determine whether a true conflict existed between California's interests and those of any other state and, if so, which state's law should apply under the "comparative impairment" approach. (*Bernhard* v. *Harrah's Club, supra,* 16 Cal.3d at p. 320.) Indeed, although defendants asserted other states' laws differed from California's, the court did not analyze the possible interests of California and other states. The court did not identify any interest any other state might have in application of its

own law to plaintiffs residing there. Neither did the court find any other state had any interest overriding California's interests. Instead, the court apparently assumed California law was not likely to apply and other states' laws would apply merely because a nationwide class would include residents of other states. ■ Further, the court simply erred in stating California has no interest in providing nonresident plaintiffs greater protection than their home states provide. California's more favorable laws may properly apply to benefit nonresident plaintiffs when their home states have no identifiable interest in denying such persons full recovery. (*Hurtado* v. *Superior Court, supra,* 11 Cal.3d at pp. 580-581, 586-587.)

To the extent the court's reference to *Riley* v. *Fitzgerald, supra,* 178 Cal.App.3d 871, may constitute an implied finding other states have interests overriding California's, the court's reliance on *Riley* is misplaced. *Riley* is distinguishable. The appellate court in *Riley* upheld the application of Texas law to claims against California defendants for wrongful acts committed in California. The appellate court engaged in a reasoned "comparative impairment" choice of law analysis not undertaken here: "Arguable California interests are prevention of fraud by California residents and corporations against foreign residents and corporations or vindication of foreign claims. Texas has an interest in controlling actions, rights and liabilities of its domestic corporations and in the uniform regulation of affairs of business corporations created under the authority of Texas statutes. . . . We do not believe that California has greater interest in providing Texas residents— former shareholders in a dissolved Texas corporation—greater protection than Texas would afford them. . . ." (*Id.* at p. 877.) *Riley* involved the unique issue not present here of the survival of a cause of action by the assignees of a dissolved out-of-state corporation's assets for damages to the corporation. Moreover, the comparative impairment analysis was not necessary to the decision in *Riley* because, as the appellate court noted, the parties stipulated in the trial court to application of Texas law and under California corporate law the effect of a corporate dissolution depends on the law of the corporation's domicile.

V

■ ■ Defendants contend the court could have properly found the proposed nationwide class was not ascertainable and the matter did not involve predominant common factual issues. Nothing in the court's findings suggests the court based its ruling upon these grounds. Further, were we to conclude the court made implied findings on these issues favoring defendants, such implied findings would not be supported by this record. The fact defendants' customer lists and monthly billing statements may not disclose which Sprint subscribers were charged for unanswered calls does not make

the proposed nationwide class unascertainable or implicate predominant individual factual issues.

The proposed class is defined as all persons nationwide subscribing to Sprint since January 1, 1981, who were charged for one or more unanswered long distance calls. Plainly such class is ascertainable. Individual subscribers know whether they were charged for unanswered calls and must prove they were so charged. No individual may recover separate damages until he comes forward, identifies himself as a class member and proves the amount of his damages. The necessity for class members to prove their own damages does not mean the class is not ascertainable. In *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 706 [63 Cal.Rptr. 724, 433 P.2d 732], the California Supreme Court stated: "Defendant apparently fails to distinguish between the necessity of establishing the existence of an ascertainable class and the necessity of identifying the individual members of such class as a prerequisite to a class suit. If the existence of an ascertainable class has been shown, there is no need to identify its individual members in order to bind all members by the judgment. The fact that the class members are unidentifiable at this point will not preclude a complete determination of the issues affecting the class. Presumably an accounting in the suit at bench will determine the total amount of the alleged overcharges; any judgment will be binding on all the users of taxicabs within the prior four years. However, no one may recover his separate damages until he comes forward, identifies himself and proves the amount thereof."

Further, the necessity for class members to prove their own damages does not mean individual fact questions predominate. In *Lazar* v. *Hertz Corp., supra,* 143 Cal.App.3d at page 140, reversing a trial court finding individual issues predominated, we stated: "The record readily lends itself to inferences, speculations and observations as to potential problems in discovery, trial, individual damages of class members, difficulties in computation of individual overcharges, complexities of the refueling charge procedures, variances in prevailing gasoline prices as to times and places and reliance by individual members on the alleged Hertz' representations. Such problems so speculated upon are not fatal to class certification. [Citation.] . . ."

VI

Defendants contend the superior court properly found a nationwide class action would be unmanageable. Although the court did not make an express finding of unmanageability, the court's comments suggest an implied finding a nationwide class action would be unmanageable because plaintiffs from the other 49 states would be involved. However, such implied finding

would be based on the unanalyzed and erroneous assumption other states' laws would necessarily apply merely because the nationwide class would include plaintiffs from other states. Further, the mere size of the proposed class numbering over a million persons does not make a nationwide class action unmanageable. In *Lazar* v. *Hertz Corp., supra,* 143 Cal.App.3d 128, this court approved a class action where potential class members numbered 5 million.

## VII

Defendants contend denial of Clothesrigger's motion to modify the certified class definition was proper because the matters at issue here are also the subject of pending administrative proceedings and lawsuits in federal courts and other states' courts.

Under Federal Rules of Civil Procedure, rule 23(b)(3) (28 U.S.C.), the court may certify a class action if it finds ". . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . ." A matter pertinent to such finding is ". . . the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; . . ." (Rule 23(b)(3)(B).) Although California courts have referred to the federal rules in considering class action criteria (*Lazar* v. *Hertz Corp., supra,* 143 Cal.App.3d at p. 143), we are aware of no California case where the pendency of another action was used as ground to deny certification.

In denying Clothesrigger's motion, the superior court did not base its ruling on the ground other actions were pending nor did it find a nationwide class action would not be superior to such other potential remedies. Further, we decline to infer such an implied finding on this record. Should the parties wish to pursue this issue, upon remand they may brief the appropriateness of applying rule 23(b) in this case. If the trial court finds rule 23(b) may properly apply, the court should identify how the pendency of other lawsuits or administrative proceedings will interfere with a nationwide class action in this case or make other appropriate findings.

## VIII

After denying Clothesrigger's motion to modify the certified class definition, the superior court deemed moot Clothesrigger's motion to amend its complaint. A favorable ruling on a motion to amend should logically precede consideration of a motion to certify a class first described in the proposed amendment.

Upon remand the superior court should first decide Clothesrigger's motion to amend the complaint, keeping in mind the policy of liberality in permitting amendments. If the court grants Clothesrigger leave to amend its complaint, the court should then decide Clothesrigger's motion to modify in accord with this opinion.

■ In deciding the motion to modify, the court should determine whether California law may constitutionally apply to the claims of proposed nationwide class members not residents of California. If the court determines application of California law would be constitutional, the court should determine whether California law will likely apply under California choice of law rules. If the court determines California law will likely apply, the court should certify the nationwide class if it finds all other requirements for certification are satisfied.

If the court determines California law may not apply to claims of all nationwide class members, the court should exercise its discretion in deciding whether to certify the nationwide class. In exercising its discretion, the court should consider the degree of complexity arising from the need to apply other states' laws. The court may decline to certify the nationwide class if it determines such complexity results in common legal questions not predominating or makes nationwide class litigation unmanageable. The court may certify the nationwide class despite such complexity if it determines the legal questions are sufficiently similar to be manageable and all other requirements for certification are satisfied.

## IX

■ With respect to future proceedings, we refer to our comments in *Lazar* v. *Hertz Corp., supra,* 143 Cal.App.3d at page 144: "The trial court retains jurisdiction throughout the proceedings concerning class certification. 'Our decisions clearly contemplate the possibility of successive motions concerning certification. In *Vasquez,* we recognized that the courts should retain flexibility in the trial of a class action, for "even after an initial determination of the propriety of such an action the trial court may discover subsequently that it is not appropriate." *Vasquez* authorized the courts to utilize the procedures in rule 23 of the Federal Rules of Civil Procedure, and observed that a certification order issued under rule 23 "may be conditional and may be altered or amended before a decision on the merits." (*Vasquez* v. *Supreme [sic] Court, supra,* 4 Cal.3d 800, 821.)' (*Occidental Land, Inc.* v. *Superior Court, supra,* 18 Cal.3d at p. 360.)"

### DISPOSITION

The order denying modification of class definition and deeming moot the motion to amend the complaint is reversed. The matter is remanded to the

superior court for further proceedings in accord with this opinion. Appellant to have costs on appeal.

Wiener, J., concurred.

**LEWIS, J.**—I respectfully dissent.

In reaching its conclusion of reversal, the majority, in my opinion, applies an inappropriate standard of review, particularly in connection with its view of the record. Moreover, I believe the trial court was correct in its reading and application of the *Phillips* and *Riley* cases (*Phillips Petroleum Co.* v. *Shutts* (1985) 472 U.S. 797 [86 L.Ed.2d 628, 105 S.Ct. 2965]; *Riley* v. *Fitzgerald* (1986) 178 Cal.App.3d 871 [223 Cal.Rptr. 889].) In fact, the *Phillips* case itself serves to demonstrate there is a conflict between California and certain other states on the specific matter of the rates of interest allowed by their laws (see Cal. Const., art. XV, § 1; Code Civ. Proc., § 685.010; cf. *Phillips, supra,* 472 U.S. at pp. 803, 816-818 [86 L.Ed.2d at pp. 636, 644-646]).) Otherwise, *Phillips* is factually and legally indistinguishable from this case in terms of its choice of law analysis and ruling so as to warrant the conclusion that "application of [California] law to every claim in this case is sufficiently arbitrary and unfair as to exceed constitutional limits." (*Phillips, supra,* 472 U.S. at p. 822 [86 L.Ed.2d at p. 648], fn. omitted.) I also believe the majority opinion contradicts the record and the statements of the trial judge as to his consideration of the relevant cases. Finally, since the issue of the applicability of rule 23(b)(3) of the Federal Rules of Civil Procedure[1] (28 U.S.C.) was argued before this court, I would conclude that rule 23(b)(3) criteria do apply to the question of certifying a nationwide class, and that it was by no means an abuse of discretion to deny the nationwide class.

I

On the matter of the standard of review, keeping in mind the "great discretion"[2] accorded a trial court in decisions on certifying class actions (*Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23]; and see *Lazar* v. *Hertz Corp.* (1983) 143 Cal.App.3d 128, 133-134 [191 Cal.Rptr. 849]), the test for an abuse of ordinary discretion is that " ' "unless a clear case of abuse is shown and unless there has been

---

[1] All rule references are to the Federal Rules of Civil Procedure unless otherwise specified.

[2] "[T]rial courts have been given *great discretion* with regard to class certification. [Citation.] . . . [I]n the absence of other error, this court will not disturb a trial court ruling on class certification which is supported by substantial evidence unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]." (*Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d 462, 470, italics added.)

a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." ' [Citations.] ' "The burden is on the party complaining to establish an abuse of discretion . . . ." ' [Citation.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 331 [216 Cal.Rptr. 718, 703 P.2d 58].)[3] Under the great discretion standard it seems appropriate to conclude that at a minimum the reviewing court must strictly apply the rule stated in *Blank* v. *Kirwan.*

By contrast the majority relies on the introductory sentence in 9 Witkin, California Procedure (3d ed. 1985) Appeal, section 262, at page 269, to the effect that there are several situations where reasons for the trial court's decision, though not required, may have significant effect on the determination of the appeal. These situations work to except the appellate decision from the general rule that reviewing courts disregard the trial court's erroneous reason for its ruling or decision if the ruling or decision is correct in law. (See *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10], quoting *Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].) Not one of the examples Witkin cites immediately following the introductory sentence has any bearing on this case.[4]

---

[3]It is noteworthy that *Blank* v. *Kirwan* overrules, sub silentio, the decision of this court in *Hurtado* v. *Statewide Home Loan Co.* (1985) 167 Cal.App.3d 1019 [213 Cal.Rptr. 712], in which there was proposed, and used, a standard of review discarding the abuse of discretion standard in matters other than factual findings and trial or pretrial administrative rulings (*id.* at pp. 1021-1026) and making the trial court's decision on a matter viewed as largely a question of law "subject to plenary appellate scrutiny." (*Id.* at p. 1027, fn. omitted; see also *Longshore* v. *Pine* (1986) 176 Cal.App.3d 731, 736 [222 Cal.Rptr. 364].) Discretionary dismissal for not bringing an action to trial within two years (former Code Civ. Proc., § 583, subd. (a), see now § 583.420) was involved in *Blank, Hurtado* and *Longshore.*

[4]Immediately following the introductory sentence, Witkin gives the following examples: "(1) An order granting a new trial must now state the grounds and reasons. If the ground is insufficiency of evidence or excessive or inadequate damages, it is 'conclusively presumed' on appeal that the order was made only for the reasons specified, and the scope of review is limited to such reasons. (C.C.P. 657; see *Mercer* v. *Perez* (1968) 68 C.2d 104, 119, 65 C.R. 315, 436 P.2d 315, *Attack on Judgment in Trial Court,* § 100.)

"(2) A motion for a nonsuit must specify the grounds in order that the opposing party may remedy the defect in his proof; hence, an order made on the wrong ground will not be sustained. (*Lawless* v. *Calaway* (1944) 24 C.2d 81, 92, 147 P.2d 604; *Markwell* v. *Sykes* (1959) 173 C.A.2d 642, 651, 343 P.2d 769, citing the text; see *Trial,* § 418.)

"(3) Where the trial judge fails to pass on the merits in reaching a decision, grounds which might have been sufficient to sustain it on the merits will not be considered. (*Gosnell* v. *Webb* (1943) 60 C.A.2d 1, 5, 139 P.2d 985 [denial of motion to reduce alimony on erroneous ground that decree merely approved property settlement and was not subject to modification].)

"(4) After a court trial the court, on request, must issue a *statement of decision* 'explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial.' (C.C.P. 632, as amended in 1981, abolishing the former requirement of findings of fact and conclusions of law.) (See *Trial,* § 394 et seq.)

"(5) Where a point is expressly left undecided, the effect on that point is a failure to pass on the merits. (See *Kyne* v. *Kyne* (1943) 60 C.A.2d 326, 332, 140 P.2d 886 ['where, as here, the trial court specifically stated that it was not determining, but refused to pass on all other

Since the examples have no application here, I am not persuaded by the majority's reliance on the introductory sentence as a springboard to its conclusion that "the appellate scrutiny should be on the reasons expressed by the trial court in the context of counsel's arguments not merely whether the trial court reached a result which can be justified by implication." (Maj. opn., p. 611.) This conclusion, in my view, is inconsistent with the basic general rule requiring an appellate court to uphold a correct result no matter what reason the trial court gave. This basic rule, I submit, is a corollary to the view, also applicable here because a substantial evidence test is involved in the review of the trial court's determination (*Richmond* v. *Dart Industries Inc., supra,* 29 Cal.3d 462, 470) that the appellate court will consider the record in the light most favorable to the prevailing party. (See *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].)

Before making its ruling the trial court considered a three-quarters of an inch thick sheath, over 120 pages, of memoranda of points and authorities supporting and opposing the motions. These memoranda cited relevant cases, including *Phillips* and *Riley* and presented the arguments we consider here. The trial court's complete statement from the bench early in the hearing shows it had read the points and authorities and discloses some of its rationale as follows: "THE COURT: Well, here is my thinking on it.

"It seems to me that I have to realistically take the position that there are going to be residents of all 50 states involved in this, and when the plaintiff indicates to me or states in its P & A's that the other 49 states have no interest in the application of this law to the detriment of their citizens, it seems to me what the plaintiff is saying is that the consumers could get a better deal

issues except the existence of the contingent fee agreement, an appellate court is not justified in holding that the order may be supported on any of the other issues involved where the determination of those issues depends upon conflicting evidence']; *Zak* v. *State Farm Mut. Liab. Ins. Co.* (1965) 232 C.A.2d 500, 506, 42 C.R. 908 ['Where the record reflects that the trier of fact has not considered a theory under which the evidence is conflicting, the reviewing court cannot rely on that theory to sustain the action of the lower court']; *Cramer* v. *Morrison* (1979) 88 C.A.3d 873, 887, 153 C.R. 865.)

"(6) Where the judge's comments indicate that he misconceived his duty in ruling on a motion for new trial. (See *Lippold* v. *Hart* (1969) 274 C.A.2d 24, 26, 78 C.R. 833, *Attack on Judgment in Trial Court,* § 37.)

"(7) Where the judge's comments show a personal bias or arbitrary point of view. Thus, in *Wirz* v. *Wirz* (1950) 96 C.A.2d 171, 176, 214 P.2d 839, plaintiff husband sued for divorce on the ground of incurable insanity, offering adequate proof by unimpeached and uncontradicted medical testimony. The trial judge, denouncing the law as unjust, denied the divorce. Although the judgment was affirmed on a distinct ground (no sufficient showing of ability to support), the appellate court strongly criticized the statements of the trial judge on the law." (9 Witkin, *supra,* § 262, pp. 269-270.)

here in California than they can in their home states and 'so we should go with the California good deal,' in effect. This does not make sense to me.

"I think it was the Riley case (phonetic) that I looked at because it seems to me California has no interest in providing residents of other states any greater protection than their home states provide. I mean, why should California take it upon itself to be the savior of the other 49 states of the union? So it just seems to me to argue, 'Well, we got certified as a state action,' I do not feel—in fact, to me it is unlikely that the court would have authorized a national class action merely because they authorized the state class action.

"So it just seems to me from the authorities, the appropriate ruling would be to deny this motion to make this class action thing expand beyond California."

The trial court then heard argument from counsel, recessed to think about it and resumed the hearing announcing it "took the time to glance quickly again at a couple of those cases" before stating its decision from which the majority quotes at some length. These facts show the trial court exercised " ' " . . . discriminating judgment within the bounds of reason . . ." ' " (*People v. Russel* (1968) 69 Cal.2d 187, 194 [70 Cal.Rptr. 210, 443 P.2d 794]) that it acted neither arbitrarily nor capriciously and that it exercised not a mental but a legal discretion " ' . . . in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice.' " (*Ibid.*) The trial court's exercise of legal discretion was "grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue." (*Id.* at p. 195.)

The majority appears to be imposing on the trial court a requirement it make *express* findings on such matters as whether the application of California law to the claims of nonresident plaintiffs would be unconstitutional and its choice of law analysis, here comparing the differences between California law and at least each of the other 49 states. No precedent is cited for such a burdensome requirement of express findings, and under the abuse of discretion standard and burden of showing it, which I believe to be applicable, there is no need for express findings in order to facilitate effective review.

Moreover, the majority uses a silent record as a basis for concluding such things as "the court did not engage in the analysis required under California choice of law rules" (maj. opn. p. 613) and: "[T]he court did not identify any proper reason California law would not likely apply to nonresident plaintiffs. [¶] The superior court did not determine whether a true conflict existed between California's interests and those of any other state and, if so, which

state's law should apply under the 'comparative impairment' approach. (*Bernhard* v. *Harrah's Club, supra,* 16 Cal.3d at p. 320.) Indeed, although defendants asserted other states' laws differed from California's, the court did not analyze the possible interests of California and other states. The court did not identify any interest any other state might have in application of its own law to plaintiffs residing there. Neither did the court find any other state had any interest overriding California's interests." (Maj. opn., p. 615.)

The absence of such matters on the record does not warrant the conclusion that the trial court either did or did not engage in the thinking to which the majority refers in these passages. Additionally, as a matter of application of the proper review standard for abuse of discretion, in the absence of clear showing of abuse founded on a record positively demonstrating erroneous thought processes by the trial court or no possible justification for its decision, I believe the reviewing court should not attribute such negative conclusions to the trial court from a silent record. Rather, the reviewing court should look for reasons in support of the decision and reverse only if it can find none and if reversal is necessary to avoid a miscarriage of justice. (*Blank* v. *Kirwan, supra,* 39 Cal.3d 311, 331.)

Considering the merits in this light, and accepting as true the statements made by the trial court, I believe it properly applied *Phillips, supra,* 472 U.S. 797, to this case and neither made erroneous legal assumptions nor used improper criteria. This conclusion alone demonstrates Clothesrigger has not carried its burden of showing a clear abuse of discretion or any injustice in not certifying a national class. *Phillips* involved the constitutionality of a state certified national class of plaintiffs who were royalty owners seeking to recover interest on royalty payments that had been delayed by Phillips. The Kansas Supreme Court had affirmed a trial court judgment which applied Kansas contract and equity law to every claim in the national class and found Phillips liable for interest on the suspended royalties to all class members at the rate of interest allowed by Kansas law. The Kansas rate of interest was, generally, higher than the interest payable under the law of other states, particularly Oklahoma, Texas and Louisiana.[5] The United States Supreme Court viewed these differences as "conflicts" (472 U.S. at p. 817, fn. 7 [86 L.Ed.2d at p. 646]) and held: "Given Kansas' lack of 'interest' in claims unrelated to that State, and the substantive conflict with jurisdictions such as Texas, we conclude that application of Kansas law to every claim

---

[5]Under Kansas law, the applicable interest rates were 7 percent for royalties retained until October 1974; 9 percent for royalties retained between October 1974 and September 1979; and thereafter at the average prime rate. (472 U.S. at p. 802 [86 L.Ed.2d at p. 635].)

Under the law of the other three mentioned states, the applicable interest rates were: Oklahoma—6 percent; Texas—zero to 6 percent; and Louisiana—7 percent. (472 U.S. at p. 818, and fn. 7 [86 L.Ed.2d at pp. 645-646].)

in this case is sufficiently arbitrary and unfair as to exceed constitutional limits." (472 U.S. at p. 822 [86 L.Ed.2d at p. 648], fn. omitted.)

The United States Supreme Court considered Kansas' contacts with the litigation including the facts that Phillips owns property and conducts substantial business there, that gas extraction is an important business there, and that only a few of Phillips's leases are there but that Kansas has hundreds of royalty-owning residents. (472 U.S. at p. 819 [86 L.Ed.2d at p. 647].) The court rejected the idea the lawsuit was analogous to a suit against a common fund located in Kansas saying in part "[t]here is no specific identifiable res in Kansas, nor is there any limited amount which may be depleted before every plaintiff is compensated." (*Id.* at p. 820 [86 L.Ed.2d at p. 647].) It also rejected the argument that because the class members did not "opt out" of the class they evinced their desire to be bound by Kansas law (*id.* at p. 821 [86 L.Ed.2d at p. 647]) and it discarded as a "bootstrap argument" the view that if a state court determines it has jurisdiction over a nationwide class action and procedural due process guaranties are present, the law of the forum should be applied unless compelling reasons exist for applying different law. (*Ibid.*) In connection with its holding the choice of Kansas interest rate law was unconstitutional, the court set out the following important considerations which must be met: "Kansas must have a 'significant contact or aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of Kansas law is not arbitrary or unfair. [Citation.] . . . .

"When considering fairness in this context, an important element is the expectation of the parties. [Citation.] There is no indication that when the leases involving land and royalty owners outside of Kansas were executed, the parties had any idea that Kansas law would control." (472 U.S. at pp. 821-822 [86 L.Ed.2d at pp. 648-649], fn. omitted.) In this case there is at a minimum a similar interest rate conflict involved. California's rate is 10 percent. (Cal. Const., art. XV, § 1; Code Civ. Proc., § 685.010.) *Phillips* is a reliable source for the fact the rates conflict, although due to changing laws it may not be currently correct on the exact rates it describes. Moreover, on the record here, Clothesrigger, as did Shutts in the *Phillips* case, has not shown any significant contacts or aggregation of contacts to the claims asserted by *each member* of the national class, contacts that create state interests in order to ensure the choice of California law is not arbitrary or unfair. Nor is there any indication here that the parties' expectation in subscribing to and using the Sprint service was that California law would control.

In view of these considerations I believe the trial court correctly applied *Phillips* to this case.

Aside from this view of the applicability of *Phillips* with respect to the rate of interest conflict, there are other areas of law most certainly in conflict. As is said in *Rose v. Medtronics, Inc.* (1980) 107 Cal.App.3d 150, 157 [166 Cal.Rptr. 16], "such legal questions as period of limitation, measure of damages, assumption of risk, informed consent, and contributory or comparative negligence, most certainly would vary from state to state, and would require the court to make diverse legal rulings on existing tort law in a multitude of jurisdictions. Patently, questions of law would be more individual than common." While *Rose* involved causes of action in product liability, strict liability and breach of express warranty which are different from those involved here, its observation of certain conflict among the laws of the states has equal application to this case involving causes of action for fraud, negligent misrepresentation and unfair business practices. Such areas as limitation periods, burden of proof, measure of damages and availability of punitive damages would most certainly be in conflict. The trial court had before it several demonstrated areas of conflict. On the basis of the same application of *Phillips* in terms of its analysis of the contacts of the parties with the state, the trial court reasonably could conclude this state had insufficient interests to permit constitutional application of California's laws on such subjects. In this connection, I believe it was fully appropriate also for the trial court to rely on the *Riley* case, *supra,* 178 Cal.App.3d 871, 877, which concluded "We do not believe that California has greater interest in providing Texas residents—former shareholders in a dissolved Texas corporation—greater protection than Texas would afford them."

## II

In denying Clothesrigger's motion to modify the certified class definition, the superior court stated it considered a nationwide class not to be suitable under the "totality of the circumstances of this case." The court's finding can reasonably be seen as an application of the criteria of rule 23(b)(3) of the Federal Rules of Civil Procedure.

Under rule 23(b)(3), if specific prerequisites are satisfied, the court may certify a class action if it also finds common legal or factual questions predominate over individual questions and "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Matters pertinent to such finding include "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class" and "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." (Rule 23(b)(3)(B), (C).) Application of rule 23(b)(3) is especially appropriate in determining whether to certify a nationwide class because of the risk of interference with proceedings in other forums.

Here the court effectively found a nationwide class action was not superior to other methods available to adjudicate the controversy fairly and efficiently. On this record the court's decision was proper. Litigation concerning the controversy seeking pecuniary and injunctive relief had already been commenced by prospective class members in the Federal Communications Commission (FCC), federal courts and courts of other states. (Rule 23(b)(3)(B).)

In January 1986 residents of various states filed a class action complaint with the FCC against providers of telecommunications services, including GTE Corporation and GTE Sprint Communications Corporation, seeking refunds for alleged charges for unanswered calls without disclosure and relief from the practices leading to such overcharges. (*Certified Collateral Corp.* v. *Allnet Communications Services, Inc.* (Jan. 8, 1986) FCC No. E-86-64.) The complaint before the FCC prays for an accounting, refunds and other compensatory damages, mandated disclosure of billing practices, punitive damages, costs and attorney fees, and a permanent injunction against imposition of charges like those challenged. In March 1986 the FCC issued an order in E-86-64 deferring ruling on the issue whether the complaint can be maintained as a class action and noting the FCC had no rule regarding certification of classes or procedures for maintaining class action suits. The complaint was filed with the FCC after the United States District Court for the Eastern District of Michigan dismissed a consolidated class action complaint replacing complaints filed in 10 other federal district courts and referred the matter to the FCC for disposition. (In re Long Distance Telecommunication Litigation (D.C.E.D. Mich. 1985) MDL Docket No. 598. No. 84CV5639DT.) On behalf of all customers charged for unanswered calls without disclosure, the consolidated class action complaint alleged federal statutory violations, common law fraud, breach of contract and conversion. The consolidated class action complaint sought an accounting, refunds and other compensatory damages, punitive damages, mandated disclosure of billing practices, attorney fees and costs, triple damages under the federal RICO statute and a permanent injunction against imposition of charges like those challenged. (In re Long Distance Telecommunications Litigation (D.C.E.D. Mich. 1984) MDL Docket No. 598.)

In 1983 a long distance telephone customer filed a class action complaint, later amended in 1985, against GTE Sprint Communications Corporation in Illinois state court on behalf of all subscribers in Illinois and nationwide alleging charges for unanswered calls, false advertising, deceptive trade practices under Illinois law and fraud. The complaint seeks an accounting, compensatory damages and attorney fees. (Belon v. GTE Sprint Communications Corporation, Cir. Ct. of Cook County, Ill., County Dept.—Chancery Div., No. 83 CH 10085.)

In 1983 a Sprint subscriber filed a class action complaint against GTE Corporation and Southern Pacific Company and their past or present subsidiaries and Southern Pacific Communications Company in New Jersey state court alleging charges for uncompleted calls without disclosure and seeking damages and attorney fees. (Hochman v. GTE Corporation, Super. Ct. of N.J., Law Div., Somerset County L-066194-83.)

A Sprint subscriber filed a complaint against GTE Sprint Communications Corporation in Florida state court alleging fraud, misrepresentation, and false and misleading advertising violating Florida statutes. The complaint seeks compensatory damages, punitive damages, sixfold damages and attorney fees. (Classic Motor Carriages v. GTE Sprint Communications Corporation, Cir. Ct. of the 11th Jud. Dist. in and for Dade County, Fla., Gen. Jur. Div., Fla. Bar No. 236896.)

In 1985 a Sprint subscriber filed a class action complaint against GTE Sprint Communications Corporation in Illinois state court on behalf of all Sprint customers for breach of contract, fraud and consumer fraud violating Illinois deceptive trade practices statutes and declaratory judgment regarding charges for incompleted calls. The complaint seeks an injunction against charges for incompleted calls, an accounting, declaratory relief, revocation of contract, punitive damages and attorney fees. (Solomon v. MCI Telecommunications Corporation, Cir. Ct. of Cook County, Ill., County Dept.—Chancery Div., No. 85 CH 10310.)

In 1983 a class action was filed against Southern Pacific Communications Company in the United States District Court for the Eastern District of Michigan on behalf of all long distance telephone service subscribers alleging breach of statutory duty to impose charges and implement practices that are just and reasonable, fraudulent nondisclosure that charges would be imposed for incompleted calls, fraudulent concealment and conspiracy. The complaint seeks compensatory damages, punitive damages, attorney fees and injunctions against fraudulent nondisclosures, fraudulent concealment of billing practices and conspiracy. (Control Electronics, Inc. v. Southern Pacific Communications Company (D.C.E.D. Mich. 1983) C.A. No. 83-1010.)

A Sprint long distance user filed a class action complaint against GTE Sprint Communications Corporation in Oregon state court on behalf of all similar subscribers regarding charges for incompleted calls, alleging breach of contract, unjust enrichment and unlawful trade practices violating Oregon statutes. The complaint seeks compensatory damages, punitive damages and attorney fees. (Sandler v. GTE Sprint Communications Corporation, Cir. Ct. of Ore., County of Multnomah, No. A 8412-07438.)

In November 1983 a Sprint subscriber charged for unanswered calls without disclosure filed a class action complaint in the United States District Court for the Northern District of California on behalf of all those similarly situated alleging violations of the federal common carrier statute and California's Consumers Legal Remedies Act, fraud and misrepresentation, and breach of contract. The complaint sought compensatory damages, attorney fees and a mandatory injunction requiring adequate disclosure and adequate refund procedures. (Schuster v. GTE Sprint Communications Corporation (D.C.N.D. Cal. 1983) No. C 83-5374 TEH.) In August 1984 the court granted the defendant's motion to dismiss on the grounds the doctrine of primary jurisdiction called for reference to the FCC of plaintiff's federal claims and the Communications Act of 1934 preempted plaintiff's state statutory and common law claims.

In November 1984 the FCC issued an order defendant GTE-Sprint Communications Corporation's billing practices as to charges for incompleted calls need not be contained in its tariffs, defendant's charging practices did not seem unreasonable under the circumstances and defendant appeared to have taken appropriate steps to assure overcharges will not ordinarily occur and to credit customers disputing their charges. The FCC also required defendant to inform the FCC of the means by which it advises customers of the possibility of billing errors and of its credit policies regarding calls of short duration. (In the Matter of Bill Correctors, Ltd. v. GTE-Sprint Communications Corporation, file No. E-84-18.)

Further, the telecommunications regulatory agencies in 37 states have certified GTE Sprint to provide intrastate services within their borders. Such agencies impose varying requirements as to matters such as tariffs and rate changes.

I believe the demonstrated abundance of federal and out-of-state proceedings raising issues similar to those in Clothesrigger's suit, the potential for interference with legitimate interests of federal and out-of-state administrative and regulatory agencies and the lack of any strong interest on the part of this state supporting creation of a national class warrant the trial court's implied finding that a class action is *not* superior to other available methods for the fair and efficient adjudication of the controversy.

As detailed above, the record demonstrates California is far from the only battlefield in this war. Other actions may be considered under rule 23(b)(3)(B) and their existence lessens the need to mount a national class here. (*Kamm* v. *California City Development Company* (9th Cir. 1975) 509 F.2d 205.) In *Kamm* the appellate court affirmed the trial court's order

dismissing the class action aspects of the lawsuit. The trial court found: " ' . . . [A] class action is not superior to other available methods for the fair and efficient adjudication of the controversy herein, especially in light of the proceedings already brought by the California Attorney General and Real Estate Commissioner . . . and of the relationship of these proceedings to the facts and posture of this particular case'." (*Id.* at p. 209.) The appellate court held in exercising its discretion under rule 23(b)(3) the trial court properly considered the existence of the state court action. The appellate court also stated the trial court could properly weigh a judicial remedy against an administrative remedy: " 'Since the purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of settling the controversy, it seems consistent with that purpose to determine whether any administrative methods of settling the dispute exist.' " (*Id.* at p. 211, quoting Wright & Miller, Federal Practice and Procedure: Civil (1973 supp.) § 1779, at p. 17.)

Further, Clothesrigger's complaint seeks an injunction in addition to monetary damages. Therefore, this case contains the seeds of direct conflict and active interference with the legitimate functions and rulings of regulatory agencies of the federal government and other states. Federal and state governments closely regulate the telecommunications industry. In this regard each state has an interest in applying its own regulations for the benefit of its own consumers. (47 U.S.C. § 152(b); *Louisiana Public Service Com'n.* v. *F.C.C.* (1986) 476 U.S. 355 [90 L.Ed.2d 369, 106 S.Ct. 1890].) For example, the primary purpose of California's regulation of utility rates "is to insure the public adequate service at reasonable rates without discrimination." (*Pac. Tel. & Tel. Co.* v. *Public Utilities Com.* (1950) 34 Cal.2d 822, 826 [215 P.2d 441]; see also Pub. Util. Code, § 704.) Other states have similar strong public policy interests concerning the means by which defendants offer and provide services to the public within their jurisdictions. Thus, for these reasons of federalism it is especially appropriate for a California trial court, in deciding whether to certify a nationwide class, to consider the effects of a national class action in interfering with other states' administrative functions. Concentrating the litigation in the California superior court would be undesirable because California's granting the relief requested, particularly an injunction, might conflict with decisions of other states' regulatory agencies as well as those of the FCC or other states' courts. (Rule 23(b)(3)(C).)[6]

---

[6]At oral argument we were alerted to a January 9, 1987, recommended decision by an administrative law judge in case 29254 pending before the State of New York's Public Service Commission. Such decision recommended the commission direct carriers to notify New York customers the possibility of being billed for an incompleted call can be minimized by limiting the time on line for unanswered and busy calls. The administrative law judge also found notices currently being given to customers about the availability of refunds are satisfactory. I consider such recommended decision only insofar as it illustrates the potential for conflicting rulings.

Finally, under the circumstances here California's interest in deterring fraud is satisfied by maintaining the case as a class action on behalf of allegedly defrauded California residents. Certifying a nationwide plaintiff class would provide minimal benefits to plaintiffs not residing in California. Such persons already have remedies available through the FCC and courts and regulatory agencies of other states having interests California does not have in regulating businesses within their jurisdictions. In this equitable matter, the superior court reasonably found a nationwide class action was inappropriate given considerations of federalism and potential interference with courts and regulatory bodies in 49 other states.

I would affirm on the bases the trial court neither used improper criteria nor made improper assumptions, its ruling is supported by substantial evidence and it did not abuse its great discretion.

Respondents' petition for review by the Supreme Court was denied July 23, 1987. Lucas, C. J., did not participate therein.