Michael PARKINSON, et al., Plaintiffs,

v.

HYUNDAI MOTOR AMERICA,
et al., Defendants.

No. SA CV 06–345 AHS (MLGx).

United States District Court,
C.D. California,
Southern Division.

Dec. 12, 2008.

Celeste Marie Brecht, Knott Glazier, Los Angeles, CA, Charles David Marshall, Jenelle Welling, Kamon Naddaf, Robert S. Green, Green Welling, Daniel T. Lebel, Sheri L. Kelly, Finkelstein Thompson LLP, Dylan Hughes, Eric H. Gibbs, Geoffrey A. Munroe, Girard Gibbs LLP, San Francisco, CA, Norman E. Siegel, Todd E. Hilton, Stueve Siegel Hanson LLP, Kansas City, MO, Tracy D. Rezvani, Finkelstein Thompson LLP, Washington, DC, for Plaintiffs.

Jason H. Anderson, Todd E. Gordinier, Craig A. Taggart, Bingham McCutchen LLP, Costa Mesa, CA, Jason R. Erb, Hyundai Motor America, Fountain Valley, CA, Jennifer A. Lopez, Bingham McCutchen, Los Angeles, CA, for Defendants.

MEMORANDUM OPINION ON ORDER: (1) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; AND (2) DENYING PARTIES' MOTIONS TO STRIKE

ALICEMARIE H. STOTLER, Chief Judge.

## I.

### *PROCEDURAL BACKGROUND*

On June 16, 2008, plaintiffs Michael Parkinson, Donn Schroeder, Michael K. Sano, Eric Matuschek, and Wesley Gorman (collec-

tively, "plaintiffs") filed a Motion for Class Certification. On June 27, 2008, defendant Hyundai Motor America ("defendant") filed opposition and a Motion to Strike and Objections to Plaintiffs' Purported Statistical Data. On August 1, 2008, plaintiffs filed a Motion to Strike and Objections to Declaration of Jason R. Erb and Evidence Attached Thereto in Support of Defendant's Opposition to Motion for Class Certification. On August 6, 2008, plaintiffs filed a reply in further support of the Motion for Class Certification.

On September 17, 2008, the Court granted the parties leave to submit supplemental filings in support of their respective positions regarding class certification. Plaintiffs filed a supplemental reply on September 17, 2008, and defendant filed a supplemental opposition on September 29, 2008.

All of the above matters came on for hearing on October 20, 2008, at the conclusion of which the Court took the matters under submission. On November 6, 2008, the Court issued an Order and Minute Order granting in part and denying in part plaintiffs' Motion for Class Certification, noting that a memorandum opinion may follow. Defendant filed a Petition for Permission to Appeal with the Ninth Circuit on November 21, 2008. The Court granted in part and denied in part defendant's application for a stay pending appeal on November 24, 2008.[1]

## II.

### FACTUAL SUMMARY

Defendant is an American subsidiary of Hyundai Motor Company that distributes, markets, sells, and issues warranties for Hyundai passenger vehicles. (First Am. Consolidated Compl. ("FACC") ¶¶ 13–14.) In the first quarter of 2002, defendant introduced the 2003 Hyundai Tiburon. (FACC ¶ 17.) According to the owner's guide and handbook, the 2003 Hyundai Tiburon came equipped with the "Hyundai Advantage—America's Best Warranty," which included: (1) a New Vehicle 60 Months/60,000 Miles Limited Warranty; (2) a New Vehicle 120 Months/100,000 Miles Limited Powertrain Warranty for original owners (60 months/60,000 miles for subsequent owners); and (3) a 12 months/12,000 miles warranty for "[n]ormal maintenance items" found to be "defective in material or workmanship under normal use and maintenance." (Decl. of Eric H. Gibbs ("Gibbs Decl."), Ex. 1 at 16, Ex. 2 at 16–17, 21, 38.) Defendant expressly excluded from coverage any "damage or failure" resulting from negligent maintenance, use of non-Genuine Hyundai Parts, misuse, abuse, accidents, modifications, or alterations. (Gibbs Decl., Ex. 2 at 18, 20.)

Plaintiffs are residents of various states, including California, who purchased a new or used manual-transmission 2003 Hyundai Tiburon GT ("Tiburon"). (Mot. Class Cert. 1.) After purchasing their Tiburons, plaintiffs each experienced problems shifting into and between gears. Each plaintiff then spent roughly $2,000 in replacement parts and repairs.

Michael Parkinson purchased a new Tiburon from an Ohio dealership in May 2003. (Decl. of Jason H. Anderson ("Anderson Decl."), Ex. S at 248.) At approximately 30,000 miles, Parkinson attempted to move his Tiburon from a parking spot but was unable to shift into reverse and had trouble transitioning into other gears. (Anderson Decl., Ex. R at 93:10–21.) Parkinson was able to drive the vehicle home, and, the next morning, drove to a local Hyundai dealership for inspection. (Anderson Decl., Ex. R at 93:14–18.) Later that day, the dealership called Parkinson to inform him that his "clutch had failed and that it would have to be replaced." (Anderson Decl., Ex. R at 105:11–21.) Although Parkinson assumed that the repair would be covered under warranty, the technician determined that the problem was a "failed" clutch disc, which was not covered. (See Anderson Decl., Ex. R at 107:22–23, 108:20–24.) Parkinson initially disputed the warranty coverage but, ultimately, paid for the repair. (Anderson Decl., Ex. R at 116:4–18, Ex. T at 249–50.)

Donn Schroeder purchased a new Tiburon from a Maryland dealership in March 2003.

---

1. The Court granted defendant's request to vacate the December 15, 2008, Final Pretrial Conference but denied defendant's application in all other respects.

(Anderson Decl., Ex. B at 57.) At approximately 53,000 miles, he was unable to shift into reverse and took the Tiburon to the dealership for repairs. (Anderson Decl., Ex. A at 75:17–25.) The service technician informed Schroeder that the clutch was worn and needed replacing but the repair would not be covered under the vehicle's warranty. (Anderson Decl., Ex. A at 89:10–14, Ex. E at 106.) Schroeder "didn't question it" and agreed to pay for the repair. (Anderson Decl., Ex. A at 90:8–10.)

Michael K. Sano purchased a new Tiburon from a California dealership in February 2002. (Anderson Decl., Ex. G at 137–38.) At approximately 88,000 miles, during his drive to work, Sano "[c]ouldn' t get [the clutch] out of gear." (Anderson Decl., Ex. F at 116:1.) Sano took his Tiburon to a dealership where a service technician test-drove the vehicle and wrote an invoice identifying the problem as a "bad" clutch. (Anderson Decl., Ex. F at 112:11–25.) The technician recommended "replacement of clutch ass[embl]y" at a quoted price of $1,895, but Sano declined. (Anderson Decl., Ex. H at 139.) Instead, Sano had a mechanic friend make the repairs. (Anderson Decl., Ex. F at 115:15–20, 118:5–7, 124:17–23.)

Eric Matuschek, a trained automobile mechanic and professional stuntman, purchased a new Tiburon from a California dealership in March 2003. (FACC ¶ 47; Anderson Decl., Ex. P at 27:1–16, 28:23–24, 29:2–12.) At approximately 30,000 miles, Matuschek noticed what he thought to be clutch-related problems while driving his Tiburon. (Anderson Decl., Ex. P at 110:4–18.) He drove the vehicle to his repair shop and began researching the symptoms on the Internet. (Anderson Decl., Ex. P at 114:5–22.) Matuschek then called a Hyundai·dealership whose representative suggested that he bring the car in for inspection; however, Matuschek declined when the representative estimated that the repair would cost roughly $2,600. (Anderson Decl., Ex. P at 114:23–25, 115:1–5.) Instead, Matuschek performed the repair himself. (Anderson Decl., Ex. P at 123:5–25, 124:23–25, 128:15–17, 131:2–12.)

Wesley Gorman purchased a used Tiburon from a Florida Ford dealership in March 2005. (Def.'s Opp. 9; Anderson Decl., Ex. I at 146.) At the time of purchase, the vehicle had approximately 41,000 miles on it. (Anderson Decl., Ex. I at 146.) In May 2005, Gorman took his Tiburon to a Florida Hyundai dealership to report a "creeping noise" and vibration when shifting. (Anderson Decl., Ex. J at 70:19–25, 71:1–2.) The Hyundai dealership told Gorman that the clutch repair was not covered under warranty and suggested that he take the vehicle to the original place of purchase—the Ford dealership—for repairs. (Anderson Decl., Ex. J at 85:1–7, 88:5–10.) When the Ford dealership also refused to cover the costs of the clutch repair, Gorman purchased an aftermarket clutch and had a Honda specialty shop perform the repairs. (Anderson Decl., Ex. J at 85:4–21, Ex. M at 173.)

In March 2004, defendant released a Technical Service Bulletin stating problems with the Tiburon's flywheel and clutch assembly. (See FACC ¶¶ 30–31.) On March 22, 2006, Parkinson filed a putative class action against defendant in Orange County Superior Court. (Not.Removal, Ex. A.) Defendant filed a Notice of Removal to this Court on April 4, 2006. At roughly the same time, plaintiffs Gorman, Schroeder, and Sano were in the initial stages of litigating putative class actions against defendant in the Central District of California. (See Def.'s Mot. to Consolidate 2–3.) On August 7, 2006, the Court consolidated the cases and appointed interim class counsel.[2] Plaintiffs filed a First Amended Consolidated Complaint on September 7, 2006, alleging, *inter alia*, violation of the Consumers Legal Remedies Act, unfair business practices, breach of written warranty under the Magnuson–Moss Warranty Act, and breach of express warranty. Defendant, after unsuccessfully moving to dismiss the action, filed its answer on April 20, 2007.

**2.** Another action, *Stark v. Hyundai Motor America*, CV 06–3161 AHS (MLGx), was consolidated pursuant to the Court's August 7, 2006 order.

Plaintiff Stark did not seek appointment as a class representative. (Mot. Class Cert. 12 n. 6.)

Plaintiffs argue that the cause of the alleged problems in plaintiffs' vehicles is a defective "flywheel system." (FACC ¶ 29.) In all manual transmission vehicles, "the torque of the engine is connected to the transmission by the clutch assembly." (Decl. of Dirk Starksen ("Starksen Decl.") 3.) The Tiburon's clutch assembly consists of a dual mass flywheel, a clutch disc, and clutch cover assembly composed of a cover stamping, diaphragm spring, and pressure plate. (Decl. of Dylan Hughes, Ex. 4 at 5; Starksen Decl. 3.) The flywheel and clutch cover assembly are attached to the engine's driveshaft. (Starksen Decl. 3.) The clutch disc is "clamped" between the flywheel and clutch cover assembly. (Starksen Decl. 3.)

"The clutch assembly engages and disengages the engine from the transmission, enabling the driver to start, stop, idle, and shift gears." (Starksen Decl. 4.) When the driver presses his foot on the clutch pedal, the clutch disconnects the engine from the transmission. (Starksen Dec. 3.) When the driver releases the clutch pedal, the clutch becomes fully engaged and connects the engine to the transmission, thus enabling the automobile to drive.

"The principal function of the dual mass flywheel is to absorb minor engine vibrations before they are transmitted to the driveline where they may create gear rattle." (Starksen Decl. 3.) To accomplish this, the dual mass flywheel is divided into two sections: a "primary" section that connects to the crankshaft, and a secondary section attached to the primary section with springs to isolate and absorb engine vibrations.

According to plaintiffs, the Tiburon's dual mass flywheel system "suffers from excessive heat build-up under normal driving conditions," which, in turn, leads to premature flywheel system failure, "rendering the vehicle inoperable." (Pl.'s Supp. Reply 1; FACC ¶ 29.)

## III.

### *SUMMARY OF PARTIES' CONTENTIONS*

On May 27, 2008, plaintiffs filed a motion for certification of a class consisting of:

All current and former owners or lessees of a manual-transmission 2003 Tiburon GT, produced on or before April 1, 2003, who paid for a replacement to the flywheel assembly, clutch disc assembly, clutch cover assembly, or clutch release bearing within the applicable warranty period.

(Mot. Class Cert. 1.) Excluded from the class are defendant, Hyundai Motor Company; any affiliate, parent, or subsidiary of defendant or Hyundai Motor Company; any entity in which defendant or Hyundai Motor Company has a controlling interest; any officer, director, or employee of defendant or Hyundai Motor Company; anyone employed by counsel for plaintiffs; any judge to whom this case is assigned, as well as her immediate family or staff; any person who purchased a Tiburon for the purpose of resale; and those pursuing claims for personal injury. (Mot. Class Cert. 7.)

### A. Plaintiffs' Motion for Class Certification

Plaintiffs each purchased a 2003 Hyundai Tiburon GT after defendant aggressively marketed the vehicle as being protected by "America's Best Warranty." However, plaintiffs, like thousands of others, have been wrongfully forced to bear the cost of repairing a defective flywheel system.

The Court should certify the class because each of the procedural requirements in Fed. R.Civ.P. 23 is satisfied, the class action device is well suited to this case, and a class action will afford a fair and efficient way of litigating the class claims.

#### 1. Class Treatment is Appropriate Under Rule 23

##### a. Plaintiffs Satisfy Rule 23(a)

Under Fed.R.Civ.P. 23(a), the class must be so numerous that joinder of all members is impracticable (numerosity), there must be questions of law or fact common to the class (commonality), the claims or defenses of the representative parties must be typical of the claims or defenses of the class (typicality), and the representative parties must fairly and adequately protect the interests of the class (adequacy).

To satisfy the numerosity requirement, joinder of all parties must be "impracticable," but not necessarily impossible. *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 487 (C.D.Cal.2006). Plaintiffs need not identify with precision the number of class members and may instead rely on reasonable inferences. *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 233–34 (C.D.Cal.2003).

Plaintiffs' evidence shows that defendant sold 12,652 class vehicles, many of which required defective flywheel system repairs that defendant failed to cover under warranty. Also, defendant sold a large number of replacement flywheels and received numerous complaints from Tiburon owners dissatisfied with the lack of warranty coverage. These facts evidence a class whose individual members would be too large to join in one action.

To satisfy commonality, plaintiffs may show either shared legal issues with divergent facts, or a "common core of facts" with divergent legal remedies. *Dukes v. Wal–Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007). Moreover, the inquiry is qualitative, not quantitative, and one significant issue may warrant certification. *Id.; Thomas v. Baca*, 231 F.R.D. 397, 400 (C.D.Cal.2005). In automobile defect cases, commonality is often found when the most significant question concerns the existence of a defect. *See, e.g., Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D.Cal.2004).

Plaintiffs show commonality here because the central issue is whether the Tiburon flywheel system is defective. Plaintiffs' allegations present a number of other common legal and factual questions, including: (1) whether and to what extent defendant was obligated to repair or replace allegedly defective flywheel systems under the warranty; (2) whether the 12 months/12,000 miles warranty for the "clutch lining" applies to the entire clutch disc assembly, as well as the flywheel, clutch cover, and release bearing; (3) whether defendant knew or should have known the flywheel system allegedly was defective; (4) whether defendant had a duty to disclose the alleged flywheel system problems; (5) whether the allegedly undisclosed problems would be material to a reasonable consumer; (6) whether defendant engaged in conduct likely to deceive a reasonable consumer; and (7) whether the alleged failure to disclose or misrepresentations regarding warranty coverage violated the Consumers Legal Remedies Act ("CLRA") or Unfair Competition Law ("UCL").

A class representative's claims are typical if they are "reasonably coextensive" with those of the absent class members. *Dukes*, 509 F.3d at 1184. Plaintiffs' warranty claims are "reasonably coextensive" with those of the absent class members because plaintiffs and every other class member purchased a 2003 Tiburon with a manual transmission, experienced problems related to the defective flywheel system, and paid for the repair out-of-pocket, in violation of the warranty agreement. Likewise, plaintiffs' consumer protection claims are "reasonably coextensive" with those of absent class members because all claims arise from defendant's common scheme to misrepresent its warranty and withhold internal knowledge of common problems with the Tiburon's flywheel system.

To establish that they will fairly and adequately represent the interests of the class, plaintiffs must show that they do not have conflicting interests with the class and that they are represented by qualified, competent counsel. *Id.* at 1185. Plaintiffs' interests and those of the unrepresented class members are aligned because each suffered the same injury; there are no conflicts of interest. Further, plaintiffs are represented by qualified and competent counsel.

**b. The Case is Maintainable as a Class Action Under Rule 23(b) (3)**

In addition to satisfying the requirements of Rule 23(a), a party seeking certification must show that the class action fits within one of the categories described in Rule 23(b). Here, plaintiffs' action meets the predominance and superiority requirements of Rule 23(b)(3).

The predominance inquiry hinges on the cohesiveness of the class—whether common legal and factual questions appear more significant than individual legal and factual

questions. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir.1998). The legal and factual issues central to plaintiffs' claims are common to all class members. These include allegations that the Tiburon flywheel system was defective and, thus, that defendant breached its warranty agreements for failing to cover the cost of repair. Further, the scope of coverage under the warranty agreement is a question of contract construction common to all members of the class. Plaintiffs' UCL and CLRA claims also hinge on common questions of law and fact, including the existence of a known defect, whether defendant had a duty to disclose that defect, whether it failed to do so, whether those undisclosed facts would be material to a reasonable consumer, and whether defendant engaged in conduct likely to deceive a reasonable consumer or comprising a common scheme by applying the 12 months/12,000 miles "clutch lining" warranty limitation to the entire flywheel system.

Individual litigation of relatively small damages claims is both a burden on the judiciary and uneconomical for plaintiffs. *Hanlon,* 150 F.3d at 1023. Few, if any, of the potential class members in this action could afford individual litigation of their claims, given the disparity between possible recovery and litigation costs. Therefore, the class action method is superior.

#### c. A Nation–Wide Class is Appropriate

A court may certify a nation-wide class for alleged violations of state law. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 821, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). For certification to be proper, application of the state's laws to out-of-state class members must comport with due process. Once plaintiffs make this showing, the burden shifts to the non-movant to show that the laws of another state apply. *Wash. Mut. Bank, FA v. Superior Court,* 24 Cal.4th 906, 921, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (2001).

#### i. Application of California Law Is Constitutional

To satisfy their burden, plaintiffs must show that California has a significant contact or aggregation of contacts to the claims of the class members to ensure that California law is not being applied arbitrarily. *See Wershba v. Apple Computer, Inc.,* 91 Cal. App.4th 224, 244, 110 Cal.Rptr.2d 145 (2001); *Clothesrigger, Inc. v. GTE Corp.,* 191 Cal. App.3d 605, 612–13, 236 Cal.Rptr. 605 (1987). Here, defendant has a substantial presence in California, including in-state business practices that form the core of plaintiffs' allegations. Additionally, a significant number of class members reside in California.

Because plaintiffs have already identified significant contacts, the burden shifts to defendant to show that the laws of another state apply. This burden is "substantial" when defendant is located in California and the alleged misconduct occurred in or emanated from California. *See In re Activision Sec. Litig.,* 621 F.Supp. 415, 430 (N.D.Cal. 1985). In California, a three-step "governmental interest" test is used to determine choice of law questions. Under the "governmental interest" test, the Court first determines whether the laws of each potentially concerned state are different from those of California. *Kearney v. Salomon Smith Barney, Inc.,* 39 Cal.4th 95, 107, 45 Cal.Rptr.3d 730, 137 P.3d 914 (2006). The Court then "examines each jurisdiction's interest in the application of its own law." *Id.* If the non-forum state laws differ from those of the forum state and the non-forum states have an interest in applying their laws in the action, the Court will select the law of the state whose interests would be most impaired. *Id.* at 107–08, 45 Cal.Rptr.3d 730, 137 P.3d 914.

Defendant cannot satisfy its burden because California's consumer protection statutes, upon which some of plaintiffs' claims are based, are largely homogeneous with those of the other fifty states and, if anything, afford greater protection to consumers. Even assuming a conflict existed, defendant cannot show that another state has a more substantial interest in having its laws apply to this action. California has a strong interest in policing wrongful conduct allegedly occurring within its borders, including when the victims of such conduct are out-of-state residents.

## B. Defendant's Opposition

The motion for class certification should be denied because factual and legal issues unique to each plaintiff predominate every facet of the litigation. Several key background facts illustrate this point.

First, individual driver habits and the driving environment impact the lifespan of a clutch. Second, the purchase and service process is individualized and detached from defendant. For example, the Tiburon was designed and manufactured in Korea by Hyundai Motor Company, then shipped to one of the 794 independently-owned Hyundai dealerships throughout the country. Defendant only becomes involved in a warranty determination when a customer disputes a dealer's coverage decision or when a dealer requests assistance with a particularly difficult vehicle diagnosis.

Third, clutch-related diagnoses are complex and highly individualized. Often, the service technician must discuss the symptoms with the customer and road test the vehicle to observe the customer's driving habits. Like virtually all other automobile manufacturers, defendant does not provide coverage where there is evidence of lack of proper maintenance, abusive driving, a prior accident, or modifications to the vehicle.

Fourth, while the class vehicle was in production, there were over fifteen different component configurations of the clutch assembly.

Fifth, the Tiburon is one of a handful of inexpensive sports coupe vehicles popular with a dedicated group of "tuner" enthusiasts. There is widespread evidence of owner modifications to Tiburons, as well as evidence of aggressive and/or abusive driving. Such evidence is readily available on the Internet, where Tiburon owners post comments, photographs, and videos of their modifications and driving.

Sixth, each of the named plaintiffs, who either modified their Tiburons with performance-enhancing parts, exhibited abusive driving, or conducted improper repairs, illustrate the predominance of individual issues.

Finally, plaintiffs mischaracterize defendant's Technical Service Bulletins and Quality Information Reports. Defendant communicates to dealerships through Technical Service Bulletins ("TSBs"), which relay diagnostic changes to a product and technical changes or issues. Defendant communicates with the parent company through Quality Information Reports ("QIRs"), which convey information and product "brainstorming" from "the field" to Korea. The TSB plaintiffs believe to be an admission of a defect is simply a number change/update to defendant's catalog.

### 1. Plaintiffs Do Not Meet the Requirements of Rule 23(a)

Certification of a class action is proper only after the Court undertakes a rigorous analysis and determines that the Rule 23 requirements have been satisfied. *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

Plaintiffs have not demonstrated numerosity because their conclusory statement that an undefined "many" are in the proposed class is insufficient and the class is unascertainable. *See In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996).

The remaining Rule 23(a) factors—commonality, typicality, and adequacy—overlap and can be discussed together. To meet these requirements, plaintiffs have simply restated the basic rule and, in conclusory terms, alleged compliance. *See id.* at 1080–81.

### 2. Plaintiffs Do Not Meet the Requirements of Rule 23(b)(3)

Under Rule 23(b)(3), plaintiffs must show that common questions predominate and that the class action is a superior means of litigating the case. Here, individual factual and legal issues predominate, and the class action procedure is not superior to litigate plaintiffs' claims.

Plaintiffs have not shown credible, classwide proof of a common defect. *See Walsh v. Ford Motor Co.,* 130 F.R.D. 260, 269 (D.D.C.1990). The clutch problems occurred at different mileage intervals and under different driving circumstances, and, rather than identify a specific defect, plaintiffs refer

generally to the "flywheel system," a term plaintiffs created. All but one of the plaintiffs failed to retain the replaced parts, and the one who did subjected them to testing. Even assuming plaintiffs can show the existence of a defect, the Court must still evaluate the multiple, varying reasons for denying each individual warranty claim, as well as whether the defect caused the clutch repairs. *See Cox House Moving, Inc. v. Ford Motor Co.*, CA No. 7:06–1218–HMH, 2006 WL 3230757, at *8 (D.S.C. Nov. 6, 2006). Plaintiffs also each dealt with defendant differently. All plaintiffs dealt with independent dealerships, and only some plaintiffs actually contacted defendant directly. Whether there was any wrongful conduct relating to the denial of warranty coverage will depend on each plaintiff's individual experience.

Moreover, each plaintiff will be subject to individual defenses relating to driving habits and vehicle modifications, each of which is grounds for excluding warranty coverage. Other plaintiffs are subject to spoliation of evidence defenses for knowingly discarding service records and conducting testing on parts without defendant's knowledge.

Variations in state laws that overwhelm common issues of fact are sufficient to preclude certification of a nation-wide class. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir.2001). Due process problems will arise if California law is applied to non-California class members. The state does not have sufficient contacts here because the alleged injury-producing contact occurred in the state where each Tiburon was purchased. *See Clothesrigger*, 191 Cal. App.3d at 612–13, 236 Cal.Rptr. 605.

The warranty contract must be interpreted according to the law of the place of performance or where the contract was made. *See Lantz v. Am. Honda Motor Co.*, No. 06 C 5932, 2007 WL 1424614, at *4–5 (N.D.Ill. May 14, 2007). As such, the warranty claims will involve the application of a variety of state laws regarding contract interpretation. Further, using California's "governmental interest" approach, there are material differences in the applicable laws of other states, other states have an interest applying their own laws to incidents that took place within their borders, and each state has an interest in providing redress for its own citizens. Plaintiffs have failed to meet their burden to show that these obstacles are not insurmountable.

The class action method is not superior because other viable options, including individual litigation and the Council of Better Business Bureau's BBB Auto Line arbitration system, exist for resolution of plaintiffs' claims.

## C. Plaintiffs' Reply

Defendant misrepresents plaintiffs' problems as "clutch problems" not covered under warranty when the real issue is failure of the flywheel system. Plaintiffs' case is about the flywheel system, not the clutch.

Although defendant argues at length that individual issues will predominate as to plaintiffs' warranty claims, it says almost nothing about plaintiffs' consumer protection claims under the UCL and CLRA.

Defendant's TSB suggests that the fifteen clutch configurations resulted from defendant's multiple, failed attempts to remedy the defect. The different configurations are simply more evidence of a defect.

Defendant's "affirmative defenses" do not defeat predominance. Each is meritless, and courts generally are reluctant to deny certification based on defenses to each individual class member's claims. *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003). Moreover, the Court has adequate procedural mechanisms for dealing with plaintiffs barred by individual defenses, such as placing those plaintiffs in a separate subclass or excluding them altogether.

Contrary to defendant's assertions, plaintiffs do meet the numerosity requirement. Even accepting defendant's contention that 80% of warranty claims were paid, at least 800 Tiburon owners were denied warranty coverage.

## D. Plaintiffs' Supplemental Reply

Defendant's internal reports, which were belatedly produced to plaintiffs, reveal that extensive testing was undertaken on the Ti-

buron flywheel system. These tests showed abnormally high temperatures under normal operating conditions. Further, the persuasiveness of defendant's evidence showing fifteen different clutch assembly configurations is questionable because it reveals that only a single vehicle was produced in one of the configurations, and only two vehicles were produced in another. Two others were not class vehicles at all, as they were manufactured with the solution to the flywheel defect described in the TSB.

### E. Defendant's Supplemental Opposition

Plaintiffs still have not told the Court what parts of the "flywheel system" are allegedly defective.

Plaintiffs' UCL and CLRA claims are not amenable to class-wide determination because they involve individual questions of injury, actual reliance, and policy and practice. *See Gartin v. S & M Nutec LLC,* 245 F.R.D. 429, 436 n. 4 (C.D.Cal.2007). Plaintiffs also do not dispute that their Magnuson–Moss claims cannot be certified for class treatment for failure to exhaust administrative remedies.

### IV.

### *DISCUSSION*

### A. Plaintiffs' Motion for Class Certification

#### 1. Legal Standard

Certification of a class is proper if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). In addition to the requirements of Rule 23(a), the Court must find that plaintiffs have satisfied at least one of the following conditions:

(1) the prosecution of separate actions would create a risk of: (a) inconsistent or varying adjudications or (b) individual adjudications dispositive of the interests of other members not a party to those adjudi-

cations; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*Dukes,* 509 F.3d at 1176. Here, plaintiffs claim that their proposed class action satisfies the third condition of Rule 23(b).

A class action may be brought under Rule 23(b)(3) if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3); *Hanlon,* 150 F.3d at 1022–23. In making these findings, the Court considers:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3)(A)-(D).

Although Rule 23(b)(3) presumes the existence of common issues of fact and law has been established under Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues. *Hanlon,* 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (citations omitted).

The Court has "broad discretion" over whether the moving party has satisfied each Rule 23 requirement, but must also conduct a rigorous inquiry before certifying a

class. *Dukes*, 509 F.3d at 1176, 1177 n. 2; *see also Gen. Tel. Co. of Sw.*, 457 U.S. at 161, 102 S.Ct. 2364. It is the plaintiff's burden to show he satisfies the class certification requirements. *Dukes*, 509 F.3d at 1176.

### 2. Analysis

#### a. Magnuson–Moss Act

The Magnuson–Moss Warranty—Federal Trade Commission Improvement Act ("MMA") regulates written warranties on consumer products and establishes remedies for consumers. *See* 15 U.S.C. §§ 2301–2312. The MMA contains an explicit congressional policy statement encouraging "warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." *Id.* § 2310(a)(1). Pursuant to this policy, a "class of consumers may not proceed in a class action ... unless the named plaintiffs ... initially resort to [the warrantor's informal dispute settlement mechanism]." *Id.* § 2310(a)(3)(C)(ii).

■ Certification of plaintiffs' MMA claims cannot be granted because plaintiffs have failed to resort to defendant's informal dispute settlement mechanism, the BBB Auto Line. Defendant's warranty contract provides that customers "must use BBB Auto Line prior to seeking remedies available to you through a court action pursuant to the [MMA]." (Gibbs Decl., Ex. 2 at 13.) Plaintiffs do not allege any attempt to use the BBB Auto Line to resolve their MMA claims because, as they assert, such attempts are "unnecessary and/or futile." (FACC ¶ 81.)

Without further elaboration by plaintiffs regarding the alleged futility of the BBB Auto Line process, and given the strong presumption in favor of encouraging alternative dispute resolution under the MMA, the Court concludes that plaintiffs' MMA claims are not certifiable.

#### b. Breach of Express Warranty

##### i. Rule 23(a)

##### (a) Numerosity

The numerosity requirement is "discharged if 'the class is so large that joinder of all members is impracticable.' " *Hanlon*, 150 F.3d at 1019 (quoting Fed.R.Civ.P. 23(a)(1)).

■ Defendant challenges plaintiffs' showing of numerosity as no more than a vague recitation of the general Rule 23 requirements. Plaintiffs point out, however, that, even accepting defendant's assertion that 80% of warranty claims were paid, over 800 Tiburon owners were denied coverage for flywheel system problems. An 800–member class is plainly sufficient to satisfy numerosity under Rule 23(a). In addition, plaintiffs allege that defendant sold 11,432 class vehicles, received over 1,500 complaints from Tiburon owners regarding lack of warranty coverage for clutch assembly repairs, and sold approximately 9,000 replacement clutches for class vehicles. With this factual support, plaintiffs' numerosity allegations are more than mere recitations of Rule 23's requirements.

■ Defendant also argues that the class is unascertainable because defendant has no way of determining which class members were denied warranty coverage and subsequently obtained repairs at a non-Hyundai dealer. "An identifiable class exists if its members can be ascertained by reference to objective criteria." *In re Wal–Mart Stores, Inc. Wage & Hour Litig.*, No. C 06–05411, 2008 WL 413749, at *5 (N.D.Cal. Feb. 13, 2008). The class definition must describe "a set of common characteristics sufficient to allow" a prospective plaintiff to "identify himself or herself as having a right to recover based on the description." *Moreno v. Auto-Zone, Inc.*, 251 F.R.D. 417, 421 (N.D.Cal. 2008) (citation and internal quotations omitted). "However, 'not all class members need to be ascertained prior to class certification.' " *Mauro v. Gen. Motors Corp.*, No. CIV. S–07–892 FCD GGH, 2008 WL 2775004, at *4 (E.D.Cal. July 15, 2008).

■ Here, plaintiffs show that potential class members will be able to objectively determine whether they are a "current [or] former owner[ ] or lessee[ ] of a manual-transmission 2003 Tiburon GT, produced on

or before April 1, 2003, who paid for a replacement to the flywheel assembly, clutch disc assembly, clutch cover assembly, or clutch release bearing within the applicable warranty period." The class definition identifies a particular make, model, and production period for the class vehicle, while excluding from the class persons who did not pay for repairs, persons who paid for repairs outside the warranty period, and certain persons affiliated with defendant. *See id.* Because the proposed class definition allows prospective plaintiffs to determine whether they are class members with a potential right to recover, the defined class is sufficiently ascertainable.

Accordingly, plaintiffs satisfy the numerosity requirement.

### (b) Commonality and Typicality

■ The threshold for establishing commonality under Rule 23(a) is relatively low. *Walsh,* 130 F.R.D. at 268. "It may be met where … the claims of every class member are based on a common legal theory, even though the factual circumstances differ for each member." *Id.; see also Hanlon,* 150 F.3d at 1019 ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.").

■ Given the low bar for satisfying Rule 23(a)'s commonality requirement, the Court finds that plaintiffs demonstrate the existence of common legal and factual questions. Citing defendant's March 2004 TSB and December 12, 2002 QIR, plaintiffs' central common question is whether the 2003 manual-transmission Tiburon suffered from a flywheel defect. (*See* Gibbs Decl. Exs. 5, 9 at HMA 13524.) Defendant disputes the meaning plaintiffs attribute to these documents, claiming they reflect little more than routine communications between defendant's various branches and its parent company. "They are not, as plaintiffs attempt to characterize them, product recall announcements or communications of admitted defects." (Decl. of Steve R. Johnson ¶ 14.) Whether the TSBs and QIRs show what plaintiffs claim they show is more properly an issue for the trier of fact. Regardless of the normal or intended use of a TSB or QIR, a jury could find that the documents tend to demonstrate a defect known to defendant when it sold or serviced the class vehicles. Under plaintiffs' theory, the class members' breach of express warranty claims stem from the existence of this alleged defect and defendant's failure to cover repairs pursuant to the warranty agreement.

■ Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). " '[R]epresentative claims are "typical" if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.' " *Chamberlan,* 223 F.R.D. at 526 (citation omitted).

■ Plaintiffs' warranty claims stem from the same alleged source: defendant's known flywheel system defect and failure to cover repairs under warranty. Accordingly, the typicality requirement satisfied.

### (c) Adequacy

■ Adequacy of representation is found where plaintiffs show: "(1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." *Dukes,* 509 F.3d at 1185.

■ There is no dispute as to the adequacy of class counsel. Additionally, the parties do not argue at length whether the named plaintiffs are adequate representatives. Plaintiffs have alleged that their interests are aligned with those of potential class members without conflict. As plaintiffs expounded at hearing, each named plaintiff, like the unnamed class members, experienced problems caused by the alleged defect during the applicable warranty period, each named plaintiff was told by defendant or a dealer that the problem was clutch-related, and each named plaintiff paid for the necessary repairs out of pocket. Accordingly, plaintiffs have shown that their interests are sufficiently aligned with those of the pro-

posed class to satisfy the adequacy requirement of Rule 23(a).

### ii. Rule 23(b)(3)

A class action may be brought under Rule 23(b)(3) if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3); *Hanlon*, 150 F.3d at 1022–23.

 Here, assuming the existence of a defect, a host of individual questions regarding warranty coverage preclude a finding that common questions of law and fact predominate. The Tiburon's warranty expressly excluded from coverage "damage or failure" due to "[n]egligence of proper maintenance," misuse or abuse, use of inferior or non-genuine Hyundai parts, and "[m]odifications, alterations, tampering or improper repair." (Gibbs Decl., Ex. 2 at 18.) Accordingly, to determine whether each class member's warranty was, in fact, breached, the trier of fact will be required to inquire into the individual circumstances of each alleged denial of warranty coverage. *See Cox House*, 2006 WL 3230757, at *5. If plaintiffs are accurate exemplars of the proposed class, this will involve examining modifications made to the vehicles that might bar coverage, questioning plaintiffs about their driving habits and evaluating the driving conditions of each class vehicle to determine whether misuse or abuse has occurred, judging the thoroughness of each dealer's inspection, and, as in the case of Matuschek, determining whether the class member ever even attempted to make a warranty claim or was denied coverage.

Given the individual questions underlying plaintiffs' warranty claims, a class action is not superior to individual litigation. Additionally, plaintiffs have an alternative, free forum for determination of warranty claims through the BBB Auto Line.

The Court, therefore, denies certification for plaintiffs' breach of express warranty claim.[3]

### c. Plaintiffs' Consumers Legal Remedies Act and Unfair Competition Law Claims

The CLRA outlaws "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ.Code § 1770. Consumers who suffer "as a result of the use or employment by any person of a method, act, or practice" under § 1770 may recover actual damages, injunctive relief, restitution, and punitive damages. *Id.* § 1780(a)(1)-(5).

Similarly, the UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof.Code § 17200.

### i. Rule 23(a)

#### (a) Numerosity

As discussed above, plaintiffs show that the class is sufficiently numerous to satisfy Rule 23(a)(1).

#### (b) Commonality and Typicality

 Commonality is satisfied with respect to plaintiffs' claims under the CLRA and UCL. Commonality will be found where plaintiffs' claims stem from the same alleged source. *Chamberlan*, 223 F.R.D. at 526. In *Chamberlan*, for example, plaintiffs brought suit under the CLRA after Ford Motor Company allegedly failed to inform consumers that certain plastic intake manifolds were defective. *Id.* The court found commonality under Rule 23(a)(2) because the claims of all class members sprang from the same source, "namely, that Ford knew that there was a risk that the plastic intake manifolds would crack prematurely, but concealed that information from ordinary consumers." *Id.*

---

**3.** Because plaintiffs' fifth cause of action for declaratory relief is premised on the breach of express warranty claim, the Court also denies certification of the declaratory relief claim.

Like the plaintiffs in *Chamberlan*, plaintiffs here allege that their claims stem from the same source: defendant's alleged knowledge and concealment of a known flywheel system defect at the time the vehicles were purchased or serviced. Given the permissive standard under Rule 23(a), the Court finds that plaintiffs allege facts sufficient to satisfy the commonality requirement.

■ Typicality also is satisfied because plaintiffs' claims—that defendant deceived customers at the time of purchase or service—are reasonably co-extensive with those of the class.

### (c) Adequacy

For the reasons stated above, plaintiffs are adequate representatives of the class.

### ii. Rule 23(b)(3)

### (a) Predominance

Defendant argues that predominance is lacking because "[p]laintiffs' consumer protection claims depend upon the same individual issues related to the elements of their fraud and warranty claims." (Def.'s Supp. Opp. 14.) Specifically, defendant argues that plaintiffs cannot establish predominance of common questions because plaintiffs are required to prove causation under the CLRA and injury in fact and actual reliance under the UCL. (Def.'s Supp. Opp. 15.) Plaintiffs, on the other hand, argue that their CLRA and UCL claims "should be certified for class treatment regardless of how the Court opts to treat [p]laintiffs' warranty claims." (Pl.'s Reply 21.)

### (1) CLRA

■ "[T]he causation required by Civil Code section 1780 does not make plaintiffs' [CLRA] claims unsuitable for class treatment." *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 1292, 119 Cal. Rptr.2d 190 (2002). For the majority of class members, causation is shown through the materiality of the misrepresentations. *Id.* at 1292–93, 119 Cal.Rptr.2d 190. If materiality is shown, reliance and causation may be presumed as to the entire class. *Id.* at 1293, 119 Cal.Rptr.2d 190.

■ Where, as here, the alleged misrepresentations are primarily defendant's failure to disclose problems with the class vehicles, plaintiffs must show that defendant had a duty to disclose, which, again, may be proven through materiality. *See Falk v. Gen. Motors Corp.*, 496 F.Supp.2d 1088, 1094–95 (N.D.Cal.2007). Materiality is determined from the perspective of the reasonable consumer. *Id.* at 1095.

Plaintiffs' CLRA claim is based largely on defendant's alleged uniform failure to "disclose numerous facts that a reasonable consumer might find material." (Pl.'s Reply 20.) Thus, the common questions for determining whether class members may recover under the CLRA include: (1) whether defendant was aware of the alleged defect; (2) whether defendant had a duty to disclose its knowledge; (3) whether defendant failed to do so; (4) whether the alleged failure to disclose would be material to a reasonable consumer; and (5) whether defendant's actions violated the CLRA. *See Chamberlan*, 223 F.R.D. at 526–27. The Court finds that these common questions predominate over any individual issues pursuant to Rule 23(b)(3).

### (2) UCL

■ Plaintiffs allege that defendant's practices are unlawful, unfair, and fraudulent in violation of the UCL. (FACC ¶ 69.) Thus, plaintiffs' claim falls under all three prongs of the UCL. *See* Cal. Bus. & Prof.Code § 17200. The Court finds that the common questions underlying plaintiffs' UCL claim predominate over individual issues.

Like plaintiffs' CLRA claim, upon which plaintiffs' UCL claim is partially based, common questions include: (1) whether the flywheel system was defective; (2) whether defendant had a duty to disclose the alleged defect; (3) whether defendant failed to disclose the defect; and (4) whether the failure to disclose would be likely to deceive a reasonable consumer. *See Williams v. Gerber Prods. Co.*, 523 F.3d 934, 938 (9th Cir.2008) (under reasonable consumer standard, plaintiff must show that the public is likely to be deceived). Further, plaintiffs establish that a common question concerns whether defen-

dant was engaged in a scheme to mischaracterize flywheel system problems in order to avoid warranty coverage.

Defendant contends that plaintiffs must show injury in fact and, potentially, actual reliance to recover under the UCL. These issues of proof, defendant claims, prevent a finding of predominance under Rule 23(b)(3).

■ A violation of the UCL may be proven "even without allegations of actual deception, reasonable reliance, and damage." *Daugherty v. Am. Honda Motor Co.,* 144 Cal.App.4th 824, 838, 51 Cal.Rptr.3d 118 (2006). Rather than show "individualized proof of deception, reliance and injury," plaintiffs must show only that "members of the public are likely to be deceived." *Id.; Mass. Mut. Life Ins. Co.,* 97 Cal.App.4th at 1288, 119 Cal.Rptr.2d 190; *see also Falk,* 496 F.Supp.2d at 1098. Whether class members must prove causation or reliance under the UCL remains an open question. The issue is currently pending before the California Supreme Court. *See In re Tobacco II Cases,* 142 Cal.App.4th 891, 47 Cal.Rptr.3d 917 (2006), *rev. granted,* 51 Cal.Rptr.3d 707, 146 P.3d 1250 (2006); *Pfizer, Inc. v. Superior Court,* 141 Cal.App.4th 290, 45 Cal.Rptr.3d 840 (2006), *rev. granted,* 51 Cal.Rptr.3d 707, 146 P.3d 1250 (2006). Notwithstanding this uncertainty and in light of the common questions identified above, the Court finds that plaintiffs establish predominance for the UCL claim. *See Stern v. AT & T Mobility Corp.,* No. CV 05–8842 CAS (CTx), 2008 WL 4382796, at *12 (C.D.Cal. Aug. 22, 2008).

### (b) Superiority

■ In addition to predominance of common legal or factual issues, plaintiffs must show that the class action method is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon,* 150 F.3d at 1023.

■ Absent adjudication on a class basis, plaintiffs must pursue their claims individually. Although the CLRA, unlike the UCL, permits recovery of both actual damages and punitive damages, *Anunziato v. eMachines, Inc.,* 402 F.Supp.2d 1133, 1137 (C.D.Cal. 2005), litigation costs would likely "dwarf potential recovery." *Hanlon,* 150 F.3d at 1023. Further, the burden on the judiciary would be significant and unnecessary, given the existence of questions common to each potential plaintiff's claim.

In sum, plaintiffs' CLRA and UCL claims satisfy the predominance and superiority requirements under Rule 23(b)(3).

### iii. Choice of Law

■ When a party seeks to certify a nation-wide class for claims arising under the law of the forum state, that party must show that the forum state has "a 'significant contact or aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [state] law is not arbitrary or unfair." *Shutts,* 472 U.S. at 821–22, 105 S.Ct. 2965 (citation omitted). "[S]o long as the requisite significant contacts to California exist, a showing that is properly borne by the class action proponent, California may constitutionally require the other side to shoulder the burden of demonstrating that foreign law, rather than California law, should apply to the class claims." *Wash. Mut. Bank,* 24 Cal.4th at 921, 103 Cal.Rptr.2d 320, 15 P.3d 1071. Under California's three-step "governmental interest" test, the "foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California." *Id.* at 919, 103 Cal.Rptr.2d 320, 15 P.3d 1071. If the Court finds that the relevant laws of other states are materially different, the Court determines "whether each of the states has an interest in having its law applied to the case." *Clothesrigger,* 191 Cal.App.3d at 614, 236 Cal.Rptr. 605. Finally, if the first two requirements are met, thus demonstrating the existence of an actual conflict, the Court must "select the law of the state whose interests would be 'more impaired' if its law were not applied." *Wash. Mut. Bank,* 24 Cal.4th at 920, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (citations omitted).

■ Plaintiffs make a sufficient state contacts showing under *Shutts* to establish that application of California law comports with due process. In *Clothesrigger*, the court found sufficient state contacts where defendant did business in California, had its principal offices in California, a significant number of plaintiffs resided in California, and defendant's agents who prepared advertising and other misrepresentations at issue in the litigation were located in the state. *Clothesrigger*, 191 Cal.App.3d at 613, 236 Cal.Rptr. 605. Plaintiffs' allegations are almost identical. Plaintiffs contend that defendant's relevant operations, including its headquarters, marketing department, warranty department, customer affairs department, and engineering department, are located in California. Plaintiffs aver that many of the alleged wrongful acts emanated from defendant's Fountain Valley offices in Orange County, California. *See In re Pizza Time Theatre Sec. Litig.*, 112 F.R.D. 15, 18 (N.D.Cal.1986). Additionally, plaintiffs allege that defendant conducts substantial business in the state through its fifty California dealerships. Finally, given the volume of California automobile sales and the number of in-state dealerships, plaintiffs claim it is likely that more class members reside in California than any other state. Thus, plaintiffs' alleged contacts are sufficient to satisfy the test under *Shutts*.

Because plaintiffs show that application of California law is constitutional under *Shutts*, defendant must show that another state's laws apply under the California governmental interest choice-of-law test. Defendant argues that the laws of the non-forum states are different from those of California, attaching to its opposition an appendix cataloging state-by-state variations involving privity, notice, reliance, scienter, damages, and other elements necessary to plaintiffs' claims. (*See* Anderson Decl., Ex. V.) Citing *Washington Mutual Bank*, defendant next argues that non-forum states have an interest applying their law to litigation involving events that occurred within their borders. Finally, defendant argues that California does not have a greater interest than other states applying its law because the incidents at issue—the individual warranty determinations—occurred in other states and, further, custom-ers would reasonably assume the law of the place of purchase would apply.

While defendant's arguments are persuasive in the context of plaintiffs' warranty claims in that denials of warranty coverage might accurately be described as occurring in the state where repair was sought, they carry less force when applied to plaintiffs' claims under the CLRA and UCL. Plaintiffs allege that the wrongful acts underlying those claims emanated from defendant's California headquarters; defendant does not adequately rebut plaintiffs' showing that the representations or omissions made regarding the Tiburon emanated from California.

■ Further, "California's consumer protection laws are among the strongest in the country," and relatively recent California state court decisions "hold that a California court may properly apply the same California statutes at issue here to non-California members of a nationwide class where the defendant is a California corporation and some or all of the challenged conduct emanates from California." *Wershba*, 91 Cal.App.4th at 244, 110 Cal.Rptr.2d 145. Thus, the Court does not find a conflict between California's consumer protection laws and the applicable laws of the non-forum states.

■ Finally, the Court recognizes that extraterritorial application of the UCL is improper where non-residents of California raise claims based on conduct that allegedly occurred outside of the state. *See Sullivan v. Oracle Corp.*, 547 F.3d 1177, 1187 (9th Cir. 008). In *Sullivan*, for example, the Ninth Circuit, citing *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214, 85 Cal. Rptr.2d 18 (1999), held "that § 17200 does not apply to the claims of nonresidents of California who allege violations of the FLSA outside California." *Sullivan*, 547 F.3d 1177, 1187. However, extraterritorial application of the UCL is not barred where the alleged wrongful conduct occurred in California. *See Norwest Mortgage*, 72 Cal.App.4th at 224–25, 85 Cal.Rptr.2d 18. In light of defendant's alleged in-state conduct discussed above, the Court finds that certification of a nation-wide class for plaintiffs' UCL claim is not barred

under the Ninth Circuit's reasoning in *Sullivan.*

Because defendant does not meet its burden under California's governmental interest test with respect to plaintiffs' CLRA and UCL claims and because plaintiffs otherwise make the showing required by Rule 23, nation-wide certification of these claims is warranted.

## B. Defendant's Motion to Strike

### 1. Legal Standard

■ In determining whether a class is to be certified, the Court looks to parties' allegations and other material "sufficient to form a reasonable judgment on each requirement." *See Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir.1975). Though the issue has not been squarely addressed by the Ninth Circuit, certain "courts have held that on a motion for class certification, the evidentiary rules are not strictly applied and courts can consider evidence that may not be admissible at trial." *Rockey v. Courtesy Motors, Inc.,* 199 F.R.D. 578, 582 (W.D.Mich.2001); *see also Bell v. Addus Healthcare, Inc.,* No. C06–5188 RJB, 2007 WL 3012507, at *2 (W.D.Wash. Oct. 12, 2007) (noting that the Ninth Circuit has not addressed the evidentiary standard at the class certification stage). Unlike a summary judgment motion under Fed.R.Civ.P. 56, a motion for class certification is not dispositive and need not be supported by admissible evidence. *Bell,* 2007 WL 3012507, at *2 (comparing Fed. R.Civ.P. 23 with Fed.R.Civ.P. 56); *see also Wiegele v. Fedex Ground Package Sys., Inc.,* No. 06cv1330, 2008 WL 410691, at *11 n. 8 (S.D.Cal. Feb. 12, 2008).

■ Still, the Court should not abandon admissibility standards entirely at the certification stage. For example, when expert reports are cited in support or opposition of certification, the Court need not engage in a full *Daubert v. Merrell Dow Pharmaceuti-*

cals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), analysis; however, the Court should conduct a limited inquiry into the reliability of the expert opinion and its relevance to determining a Rule 23 requirement. *See Dukes,* 509 F.3d at 1179–80.

### 2. Analysis

Defendant seeks to strike what it characterizes as inadmissible statistical data and data comparisons. This data consists of:

(1) Complaint data relating to the Tiburon and other unrelated vehicles;

(2) Warranty claims data for the Tiburon and other unrelated vehicles; and

(3) Warranty claims data for different Tiburon models and years.

(*See* Gibbs Decl., Exs. 10–12.) Defendant argues that: (1) this evidence constitutes inadmissible hearsay; (2) the comparative statistics are irrelevant; and (3) warranty claims are, effectively, settlement negotiations.

Given this stage in the proceedings and the applicable evidentiary standard, the Court denies without prejudice defendant's motion to strike.[4] Defendant's evidentiary objections may be asserted prior to or during trial.

## C. Plaintiffs' Motion to Strike

### 1. Legal Standard

■ Plaintiffs seek to strike the declaration Jason R. Erb and attachments thereto because defendant allegedly failed to produce this evidence pursuant to its obligations under Fed.R.Civ.P. 26. Alternatively, plaintiffs claim that the Erb declaration attachments were plainly responsive to several of plaintiffs' requests for production.

Rule 26 of the Federal Rules of Civil Procedure requires a party to provide certain initial disclosures and to supplement those disclosures as litigation progresses. Fed. R.Civ.P. 26(a), (e). Of relevance here, a par-

---

4. Defendant cites to Local Rules 7–6 and 7–7 for the applicable evidentiary standard. Local Rules 7–6 and 7–7 require that declarations accompanying motions "contain only factual, evidentiary matter and ... conform as far as possible to the requirements of [Fed.R.Civ.P. 56(e)]." Defendant's recitation of Local Rules 7–6 and 7–7 is

accurate; however, neither Local Rule reads as a strict evidentiary and admissibility mandate. More importantly, as the courts in *Bell* and *Wiegele* noted, a motion under Rule 23, unlike a motion under Rule 56, is not dispositive, and the admissibility standards should be applied accordingly.

ty must disclose "a copy—or description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R.Civ.P. 26(a)(1)(A)(ii). Additionally, parties must disclose witness information at least thirty days prior to trial. Fed.R.Civ.P. 26(a)(3). Under Fed.R.Civ.P. 37(e), the Court may prevent a party from supporting a motion with evidence not produced or supplemented in violation of Fed.R.Civ.P. 26(a) or (e). Rule 37 vests the Court with broad discretion in sanctioning parties for discovery violations. 8A Wright & Miller, *Federal Practice and Procedure*, § 2284 (1994 & 2008 Supp.).

### 2. Analysis

Given that the Court is presently deciding the certification issue—a relatively early stage in the proceedings—the Court denies plaintiffs' requested Rule 37 sanctions. The Erb declaration and attachments are relevant to the certification inquiry in that they tend to counter plaintiffs' claim that common questions will predominate. Plaintiffs may reassert their objections prior to or during trial and are not prejudiced by the Court's consideration of defendant's evidence in deciding class certification.

Further, defendant argues persuasively that the printed internet postings were created and published by plaintiffs themselves, suggesting that *plaintiffs* were required to produce the documents in response to defendant's discovery requests. Plaintiffs' motion to strike is denied without prejudice.

### V.

#### *CONCLUSION*

Accordingly and for the foregoing reasons, the Court grants certification of plaintiffs' claims arising under the UCL and CLRA, denies certification for plaintiffs remaining claims, and denies the parties' respective motions to strike.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum Opinion on counsel for all parties in this action.

